[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (DOCKET ENTRY NO. 130)
CT Page 948
The plaintiff, Allen Goodman, trustee for Park Distributors, Inc.'s profit sharing trust, filed this amended four-count complaint on December 29, 1999, against the defendants, UST Bank Connecticut and Deputy Sheriff Donald Mattice. The following undisputed facts are relevant to a decision on Mattice's motion to strike.
In 1991, Park Distributors, Inc. (Park) was a defendant in a lawsuit filed by Freeman, Davis, Furgatch and Company. On January 9, 1992, a judgment in the amount of $13,397.80 was rendered against Park. On or about July 20, 1993, Mattice executed on that judgment. At the time of the execution, Park maintained two accounts with UST Bank Connecticut. One account was a general business account, while the other was a profit sharing trust account. This latter account, entitled "Park Distributors, Inc., Profit Sharing Account," was allegedly maintained for the purpose of funding an employee pension plan. Pursuant to the execution levied by Mattice, the bank debited the sum of the judgment from the profit sharing account.
On September 9, 1996, Park filed a revised and amended four-count complaint against UST Bank Connecticut and Mattice. Counts one and two alleged that UST Bank Connecticut wrongfully allowed Mattice to execute the judgment against the profit sharing trust account, in violation of General Statutes § 52-367a[1] and General Statutes § 52-352b[2]
respectively.[3] Count three was brought against Mattice individually and alleged a wrongful execution against the trust account. Count four alleged conversion against UST Bank Connecticut.
Previously, on March 6, 1997, Mattice moved to strike count three of the revised amended complaint on the grounds that (1) no liability rests against a deputy sheriff for serving a valid execution; and (2) Park's claim was time barred under General Statutes § 52-583.[4] In a memorandum of decision dated January 26, 1998, the court, Skolnick, J.,
granted Mattice's motion to strike. Park Distributors v. UST BankConnecticut, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 334576 (January 28, 1998, Skolnick, J.)
(21 Conn.L.Rptr. 259). The court stated that, construed in a manner most favorable to Park, count three essentially alleged that Mattice converted Park's money by executing judgment on the wrong account. Id. Relying onFair Cadillac Oldsmobile Corp. v. Allard, 41 Conn. App. 659, 662,677 A.2d 462 (1996),[5] the court concluded that sheriff's action in mistakingly levying a facially valid execution on the wrong account did not constitute a wrongful taking. Park Distributors v. UST BankConnecticut, supra. CT Page 949
On February 10, 1998, Park filed a motion to add Allan Goodman, Trustee of the profit sharing trust, as a party plaintiff, which motion was granted on May 19, 1998. On December 29, 1999, Park filed an amended four-count complaint, which complaint withdraws Park and names Goodman as plaintiff. Count one alleges that UST Bank Connecticut wrongfully allowed an execution against Park to be levied against the profit sharing trust account of Park's employees, which account was not the property of Park and therefore not subject to execution. Count two alleges breach of contract against UST Bank Connecticut for failing to safeguard the profit sharing trust account funds. Counts three and four allege conversion against UST Bank and Mattice respectively.
Presently before the court is Mattice's motion to strike count four of the amended complaint.[6] As grounds for the motion, Mattice asserts 1) that no liability may rest against a deputy sheriff for serving a valid execution; 2) the plaintiff's claim is time barred under § 52-583; and 3) the court previously granted Mattice's motion to strike the same claim in a prior complaint, which decision is the law of the case.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "[F]or the purpose of a motion to strike, the moving party admits all facts well pleaded." RK Constructors, Inc. v. FuscoCorp., 231 Conn. 381, 383 n. 2, 650 A.2d 153 (1994). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Faulkner v. UnitedTechnologies Corp., 240 Conn. 576, 580, 693 A.2d 293 (1997). "The court must construe the facts in the complaint most favorably to the plaintiff." Id. "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citation omitted; internal quotation marks omitted.)Lombard v. Edward J. Peters, Jr., P.C., 252 Conn. 623,626, 749 A.2d 630 (2000).
Count four of the plaintiff's amended complaint alleges that the defendant converted money belonging to Park employees by executing, without "proper authority," against an account not owned by Park but, rather, by Park employees. (Amended Complaint, pp. 5, ¶¶ 15-16.) Count four further alleges that Mattice "converted property belonging to the employees of `Park' to and for his own use as he generated and kept a portion of said monies as a fee for service under the execution." (Amended Complaint, p. 6, ¶ 19.) CT Page 950
Mattice's law of the case argument is premised on the court's January 26, 1998 decision on his previous motion to strike. The plaintiff counters that the law of the case doctrine does not apply because the amended complaint contains "an overriding circumstance and evidence which was not before the court at the time of the original motion." (Objection to Motion to Strike, p. 4.) Specifically, the plaintiff asserts that the amended complaint names a "natural person" as plaintiff which, under General Statutes § 52-352b, renders the profit sharing trust account exempt from execution. The plaintiff further argues that the amended complaint contains new allegations against Mattice, namely that he, "a licensed process server . . . should have been aware that the profit sharing trust account was exempt from execution [pursuant to] §52-352b. Mattice's act of executing the judgment upon this exempt account further evidences a lack of due care, a lack of due diligence and amounts to conversion of `Park's' employees' funds. (Objection to Motion to Strike, p. 7.)
The law of the case doctrine provides that "[w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." Breen v. Phelps, 186 Conn. 86,99, 439 A.2d 1066 (1982). "The law of the case . . . is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . . In essence it expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . . A judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . . Nevertheless, if the case comes before him regularly and he becomes convinced that the view of the law previously applied . . . was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." (Internal quotation marks omitted.) State v. Arena, 235 Conn. 67, 80, 663 A.2d 972
(1995).
The plaintiff argues that the complaint presently before the court contains new allegations not considered by the court at the time the first motion to strike was granted. In its memorandum' of decision on the first motion to strike, however, the court summarized the plaintiff's argument as follows: "In its objection to the motion to strike, the plaintiff argues that General Statutes § 52-583 does not apply in the present case. Rather, the plaintiff argues that since the action sounds in conversion, the three year statute of limitations recited in General Statutes § 52-577 applies." Park Distributors v. UST BankConnecticut, supra, 21 Conn.L.Rptr. 259. "The plaintiff [further] alleges CT Page 951 that the defendant should have been aware that the profit sharing trust account was exempt from execution under General Statutes § 52-352b, which lists property that is exempt from attachment or execution. Accordingly, the plaintiff contends that the execution of the pre-existing judgment on a wrong account constituted a lack of due care and diligence." Id., 260.
The only differences between the plaintiff's prior claim of conversion and the present claim is the addition of Goodman, trustee of the profit sharing trust account, as plaintiff and the allegation that Mattice's fee was paid out of the levied upon funds. The plaintiff reasons that the naming of a "natural person" as plaintiff in the case implicates the exemption provisions of § 52-352b which, in turn, makes the conversion claim against Mattice legally sufficient. Section 52-352b, however, pertains to judgment debtors. Specifically, it exempts from execution certain property of judgment debtors who are "natural persons." The plaintiff, however, is not a judgment debtor and, therefore, §52-352b has no bearing on the plaintiff's claim nor on this case. More importantly, the court's decision granting Mattice's first motion to strike was not based on the inapplicability of the exemption provisions of § 52-352b to corporate debtors. Instead, the court, relying onFair Cadillac Oldsmobile Corp. v. Allard, supra, 41 Conn. App. 662, stated: "It has been consistently held that a sheriff is not required to look beyond the process that is given to him for service. . . . Once provided with a facially valid execution, it is the duty of the sheriff to make demand pursuant to those executions. Failure to do so renders the sheriff liable to the party seeking performance. . . . In Fair CadillacOldsmobile Corp. v. Allard, supra, 41 Conn. App. 659, the defendant sheriff was found not to be liable for wrongful conversion even after receiving and keeping a portion of an executed judgment, later to be found invalid, as part of the sheriff's fees. In that case, the Appellate Court held that a process was valid as long as it `appears to be valid in the judgment of an ordinarily intelligent and informed layman.' Id.,
662. Validity of an execution, accordingly, was not to be determined upon the `basis of scrutiny by a trained legal mind; nor is it to be judged in the light of facts outside its provisions which the officer may know. . . .' Id." (Citations Omitted.) Park Distributors v.UST Bank Connecticut, supra, 21 Conn.L.Rptr. 260.
The plaintiff argues that Fair Cadillac is distinguishable from the facts of this case because the sheriff in that case levied a facially valid execution, later determined to be invalid, on the right account. Here, execution was levied on the wrong account which, the plaintiff argues, constitutes a breach of due care and diligence. The plaintiff relies on Burritt v. Plate, 40 Conn. Sup. 103, 481 A.2d 425 (1983), as support for his argument that a sheriff can be held liable for conversion CT Page 952 in such instances. There, the court considered the issue of whether a sheriff was liable for damages for levying on and selling construction equipment, where the sheriff encountered the equipment in the hands of an execution debtor, and was not aware that the debtor was not the owner of the equipment Id., 105. This was an issue of first impression at the time, and the court noted that the general rule in other jurisdictions was not to hold the sheriff liable for conversion unless the sheriff had actual notice that the debtor was not the true owner of the property. Id. The court did not follow the general rule, however, but held that "a sheriff must use due care and diligence in determining who the true owner of the property is before it is sold to avoid liability for conversion." Id., 106. The court concluded that by checking the UCC-1 filings in Hartford and by checking the local land and assessor's records to see if there were any filings on the equipment in the debtor's name, the sheriff had exercised due care and diligence and, accordingly, was not liable for conversion. Id., 107.
Burritt v. Plate is distinguishable from the facts and holding of FairCadillac. The former case involved execution against personal property pursuant to General Statutes § 52-356a[7], which provides for execution against and sale of nonexempt personal property of a judgment debtor "other than debts due from a banking institution or earnings." Execution in Fair Cadillac, as well as in the present case, was levied pursuant to § 52-367a. The responsibilities of the levying officer are decidedly different under the two sections. Under § 52-367a, the officer's role is limited to serving the execution upon the bank. The bank, in turn, is charged with acting upon the execution by paying over to the serving officer the amount of the judgment within the prescribed period. The officer's duties under § 52-356a, on the other hand, are far more involved and include the identification, seizure and sale of a judgment debtor's nonexempt personal property. The court's holding inBurritt v. Plate, supra, 40 Conn. Sup. 106, therefore, that "a sheriff must use due care and diligence in determining who the true owner of the property is before it is sold," does not apply to § 52-367a.
A deputy sheriff cannot be held liable for conversion where the sheriff levies a valid bank execution and the bank, thereafter, debits the wrong account. As the Appellate Court noted in Fair Cadillac Oldsmobile Corp.v. Allard, supra, 41 Conn. App. 662, "if a writ appears to be good on its face, appears to have been issued by a competent authority, and has been issued with legal regularity, a sheriff has a duty to serve it and will be protected in making such service." Mattice's motion to strike count four of the plaintiff's amended complaint is, accordingly, granted.[8]
RUSH, J. CT Page 953