[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
At issue is the State's request for costs incidental to the purported execution of a capias mittimus upon the defendant. The State seeks reimbursement of $240.00 billed by two deputy sheriff's. The defendant objects, claiming that he voluntarily appeared in court.
This case dates back to 1980 when the State commenced a paternity action against the defendant alleging him to be the father of two minor children. Process was returned to geographical area fourteen. On April 21, 1980 the court, Doyle, J., entered a judgment of paternity as to the younger child only. Subsequently, several enforcement motions ensued in the geographical area court. In 1991 the plaintiff moved to increase the CT Page 13161 support order. The case was transferred to the Family Support Magistrate Division and assigned a judicial district docket number. The court,Ginsberg, F.S.M., heard and granted the modification.
Subsequently, the State filed contempt citations in 1995, 1996 and 1997 against the defendant. There were protracted proceedings in this court. On August 19, 1997 the present contempt citation was served in hand upon Mr. Robinson citing him to appear in court on October 22, 1997. He failed to appear on that date and the court, Matasavage, F.S.M., ordered that a capias mittimus issue. That capias was vacated when the respondent voluntarily presented himself in court on November 26, 1997. He was also present in court on the next confinuance date, January 7, 1998. The defendant was ordered to again appear in court on April 15, 1998. Meanwhile, the child subject to the support order reached majority, leaving only an arrearage payment order pending.
Notwithstanding a direct order to appear in court, the defendant defaulted and failed to present himself in court on April 15, 1998. The court, Hutchinson, C.F.S.M., ordered that a capias issue. It is that capias that gives rise to the present dispute. The court held a hearing and took testimony from the support enforcement officer, one of the deputy sheriff's who claimed to execute the capias, and the defendant. A partial transcript is lodged in the court file.
It is undisputed that the defendant was presented to this court at 95 Washington Street, Hartford during the court session held at that location on September 14, 1999 and that he was in the custody of the sheriff's department at the time. The court finds that the capias mittimus document at some earlier time was lodged with Deputy Sheriff Barton. The support enforcement division provided Sheriff Barton with a home address.
The sheriff together with another deputy went to the home address but the defendant was not home. They later went to the defendant's place of employment where they learned that he was out of work on extended sick leave. On a later date they again went to the defendant's home. Finding him there, they began to execute the capias. However, the defendant told them he had recently had heart surgery and needed to see his doctor. Transcript (hereinafter T) 9, 12. The sheriff agreed to allow the defendant to go to his doctor and arranged to meet him the following week.
On the designated date the sheriff's went to the defendant's home but again found that he was not present. What transpired next is disputed. Apparently Deputy Sheriff Barton ascertained that the defendant had gone to court. He then went to the courthouse to arrest the defendant. CT Page 13162 Initially, in response to a question from the support enforcement officer: "Did you meet him here" the sheriff responded "Yes." T, 10.
When questioned by the court, the sheriff first answered: "We picked him up here and took him into custody and brought him over to Lafayette Street and took him down there." T, 13. When the defendant challenged this account, the sheriff then stated: "He may have been in the defense area already. or he may have been outside the sheriff's office at Lafayette Street. I'm not exactly sure." He then admitted that he was not sure where or when the defendant was placed in custody. T, 13-14.
The defendant testified that he arrived at the courtroom at 9:00 a.m. before court opened. He spoke to a uniformed sheriff in the courtroom and said that he was turning himself in. He was told to wait. Sometime after court opened at 10:00 a.m. he was apparently brought to the criminal division court at Lafayette Street where "they locked me up." Later he was returned to Washington Street where he was presented to the court as an executed capias. T, 14-16. The court asked the defendant: "Were you coming here to see the sheriff? Is that what you were coming to do?" The defendant replied: "No. I was coming to the court." The defendant then denied that Deputy Sheriff Barton executed the capias. In fact, he claimed that on the day in question he never saw Sheriff Barton. T, 17-18. The court asked: "So who arrested you?" The defendant: "The sheriff downstairs at Lafayette Street."
The court then engaged in the following colloquy:
"THE MAGISTRATE: Sheriff Barton, did you or did the other person assigned to the court actually effectuate the physical arrest of this gentleman on the day in question?
"SHERIFF BARTON: I think he may have been taken down by a Special Deputy Sheriff. And then I was called in and completed forms.
"THE MAGISTRATE: I didn't ask if you completed forms. I want to know who arrested him."
"SHERIFF BARTON: It may have been the Special Deputies at 101 Lafayette Street. I don't remember exactly where I saw him that day."
Sheriff's and deputy sheriff's are not private bounty hunters entitled to charge what the market will bear for such services as they render. They are civil officers whose duties and compensation are established by statute. "A sheriff is subject to penalties if he `makes a false or illegal return.' General Statutes § 6-32; see also General Statutes §§ 6-33 and 6-35; Fair Cadillac Oldsmobile Corporation v. Allard,
CT Page 1316341 Conn. App. 659, 662, 677 A.2d 462 (1996); Steinbach, Inc. v. Cowles,
Superior Court, judicial district of Fairfield at Bridgeport, doc. no. CV90-0276826, 1992 Ct. Sup. 6685, 6687 (July 15, 1992, Lewis, J.); 1585Reservoir Avenue v. Melhorn, Superior Court, judicial district of Fairfield at Bridgeport, doc. no. CV89-0259090 1990 Ct. Sup. 2347
(September 28, 1990, Cioffi, J.). The imposition of an additional "service fee" by a sheriff has been specifically found unlawful. Riouxv. State Ethics Commission, Superior Court, judicial district of Hartford, doc. no. CV96-0472653, 1997 Ct. Sup. 1900, 1901 (March 4, 1997,McWeeney, J.)." Welch v. Hernandez, 11 S.M.D. 249, 252 (1997).
There is no specific statutory provision under the duties of a sheriff styled "execution of a capias". This function falls under the generic "duties" section of chapter 78. General Statutes § 6-32 states[1]
in part: "Each sheriff and each deputy sheriff shall receive each process directed to him when tendered, execute it promptly and make true return thereof. . . ." In the present case it is uncontroverted that Deputy Sheriff Barton received the process and that he made return to the court. However, this court can not find as a matter of fact that he executed this capias.
It is troubling that the deputy's testimony regarding the actual arrest of the defendant not only conflicts with that of the defendant but is internally inconsistent. Mr. Robinson adamantly and consistently denied that he ever saw Sheriff Barton on the day he was detained. Sheriff Barton, in contrast, first claimed to have personally executed the capias at 95 Washington Street ("we picked him up here"), then allowed that it may have been at Lafayette Street, then uncertainty ("I'm not exactly sure), then avoidance ("I was called in and completed the forms") and finally the kernel of an admission that he had not personally executed the capias at all ("It may have been the Special Deputies at 101 Lafayette Street").
"It is well established that in a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." Powers v. Olson, 252 Conn. 98,105, 742 A.2d 799 (2000); Sender v. Sender, 14 S.M.D. ___ (2000, Miller, F.S.M.); see also Griffin v. Nationwide Moving Storage Co.,187 Conn. 405, 422, 446 A.2d 799 (1982); Riccio v. Abate, 176 Conn. 415,418, 407 A.2d 1005 (1979); Raia v. Topehius, 165 Conn. 231, 235,332 A.2d 93 (1973); Cook v. Bieluch, 32 Conn. App. 537, 549, 629 A.2d 1175, cert. denied 228 Conn. 911, 635 A.2d 1229 (1993); Cruz v. Kourpouanidis,
12 S.M.D. 38, 39 (1998); Hepburn v. Hepburn, 8 S.M.D. 126, 133 (1994);Fretina v. Fretina, 5 S.M.D. 139, 142 (1991).
"This is so because the trier of facts' assessment of the credibility CT Page 13164 of the witnesses [is] based on its firsthand observation of their conduct, demeanor and attitude. In re Felicia B., 56 Conn. App. 525,526, 743 A.2d 1160, cert. denied, 252 Conn. 952, 748 A.2d 298 (2000)"Sender v. Sender, supra, 14 S.M.D. ___ (Internal quotation marks omitted). The court has the right to accept part and disregard part of the testimony of any witness. Barrila v. Blake, 190 Conn. 631, 639,461 A.2d 1375 (1983); Smith v. Smith, 183 Conn. 121, 123, 438 A.2d 842
(1981); Rood v. Russo, 161 Conn. 1, 3, 283 A.2d 220 (1971); Lynk v.Lynk, 11 S.M.D. 233, 241 (1997); Carli v. Ruszala, 10 S.M.D. 320, 321 (1996); Tsirigotis v. Tsirigotis, 9 S.M.D. 152, 155 (1955); Kimery v.Kimery, 9 S.M.D. 54, 56 (1995); Berluti v. Berluti, 5 S.M.D. 377, 382 (1991).
After carefully considering the testimony of the witnesses and giving due regard to conduct, demeanor and attitude, the court finds by a preponderance of the evidence that Deputy Sheriff Barton did not complete execution of the capias. Complete execution of a capias requires not just the pursuit of the subject and the filling in of forms. It requires the bodily arrest of the subject and delivery of him to the court.
The statute governing payment of sheriff's fees is consistent with this analysis. General Statutes § 52-261 provides compensation for the "officer or person who serves process . . ." in accordance with a detailed schedule. It has been established that portions of this statute govern fees for execution of a capias. Boganski v. Boganski, 7 S.M.D. 118, 13 Conn.Fam.L.J. 21 (1993). Two conclusions are implicit from a fair reading of the statute: fees become due only when execution is completed, and they are only due to the officer who executes the process.
Here, the sheriff apparently seeks payment for the pursuit rather than the execution. The statute does not provide this. When Mr. Robinson walked into the courtroom and court was opened for business, the purpose of the capias mittimus was satisfied and execution was no longer appropriate. It was not proper to then spirit the defendant outside the presence of the court for apparently the sole purpose of generating a fee. Even if the arrest of the defendant had been properly accomplished (for example, if he had been arrested before he arrived in the courthouse) only the sheriff who executed the capias is entitled to a fee.[2]
The deputy sheriff expended time and effort to pursue the defendant and even generously allowed him to complete medical treatment prior to executing the capias. However, the issue is not whether the sheriff should be compensated for his time expended, The statute does not provide CT Page 13165 for this. If a remedy is appropriate that is a legislative decision. The deputy sheriff here did not "duly and promptly execute" the capias and then submitted a return that is at best questionable.
The deputy sheriff is not entitled to a fee under the circumstances found by the court. Accordingly, the State's request for costs is denied.
BY THE COURT
 Harris, T. Lifshitz Family Support Magistrate